UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

RUTHANN G.[1],                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )          CIVIL NO. 2:20cv252
                                        )
ANDREW M. SAUL,                         )
Commissioner of Social Security,        )
                                        )
          Defendant.                    )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant
Commissioner of Social Security Administration denying Plaintiff's application for a period of
disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act.
Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall
file a certified copy of the transcript of the record including the evidence upon which the findings
and decision complained of are based.  The court shall have the power to enter, upon the
pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision
of the [Commissioner], with or without remanding the case for a rehearing."  It also provides,
"[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be
conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to
engage in any substantial gainful activity by reason of any medically determinable physical or
mental impairment which can be expected to last for a continuous period of no less than 12

_____

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1.     The claimant last met the insured status requirements of the Social Security Act on June 30, 2019.

2.     The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 30, 2016 through her date last insured of June 30, 2019 (20 CFR 404.1571 *et seq.*).

3.     Through the date last insured, the claimant had the following severe impairments: right carpal tunnel syndrome, lumbar degenerative disc disease, scoliosis, degenerative disc disease of the right hip, and degenerative disc disease of the left knee (20 CFR 404.1520(c)).

4.     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 2 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) such that the claimant can only occasionally climb ramps, stairs, ladders, ropes, or scaffolds. Claimant can only occasionally balance, stoop, kneel, crouch, or crawl. Claimant can perform frequent but not constant handling and fingering with the dominant right arm.

6.     Through the date last insured, the claimant was capable of performing past relevant work as a Paralegal. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CCFR 404.1565).

7.     The claimant was not under a disability, as defined in the Social Security Act, at any time from March 30, 2016, the alleged onset date, through June 30, 2019, the date last insured (20 CFR 404.1520(f)).

(AR 17-23).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits.

The ALJ's decision became the final agency decision when the Appeals Council denied review.

This appeal followed.

Plaintiff filed her opening brief on March 30, 2021. On May 1, 2021 the defendant filed a

memorandum in support of the Commissioner's decision to which Plaintiff replied on June 3,

2021.   Upon full review of the record in this cause, this court is of the view that the

Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See*

*Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test

as follows:

> The following steps are addressed in order:  (1)  Is the claimant
> presently unemployed?  (2)  Is the claimant's impairment "severe"?
> (3)  Does the impairment meet or exceed one of a list of specific
> impairments?  (4)  Is the claimant unable to perform his or her
> former occupation?  (5)  Is the claimant unable to perform any other
> work within the economy?  An affirmative answer leads either to the
> next step or, on steps 3 and 5, to a finding that the claimant is
> disabled.  A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature

of the ALJ's decision to deny benefits, it is clear that Step 4 was the determinative inquiry.

Plaintiff stopped working after she developed limited mobility and left eye swelling. (AR

36, 40.) An April 2015 x-ray of the hip revealed osteoarthritis. (AR 305.) CR scans of the pelvis

and left knee revealed degenerative changes in the hips and knees. (AR 267, 271.) A May 2015

x-ray of the left hip and of the right knee revealed degenerative joint disease and a possible medial

meniscal tear in the knee. (AR 258.) A July 2018 CR scan of the lumbar spine revealed further

degenerative changes as well as scoliosis. (AR 748.) A November 2018 EMG of the wrists

4

revealed right carpal tunnel syndrome. (AR 824.)

Plaintiff suffered left heel pain, swelling in her legs, bilateral knee pain, hip pain, and intermittent dizzy spells that treating providers diagnosed as vertigo. (AR 256.) She suffered balance problems. (AR 493.) Her knees buckled when she used the stairs. (AR 256.) She suffered back pain that radiated to her right side, that was associated with urinary urgency and frequency and diarrhea. (AR 261.) She also suffered abdominal pain that occurred about five times a day for a few minutes at a time. (AR 263.) These episodes flared after she ate and exacerbated diarrhea, causing episodes two-to-three times a day. *Id*. In May 2016 Plaintiff underwent a colonoscopy in response to these reported symptoms that revealed a sigmoid colon polyp and colonic spasms. (AR 265.) She reported left shoulder pain when she raised and lowered her arm. (AR 462.) She suffered left eye pain after sitting in front a computer screen for extended periods which limited her productivity. (AR 462-63.)

Plaintiff injured her knee in 2004 and, at the time, she was unable to receive treatment for the injury, which resulted in the pain and decreased knee mobility she experienced during the period in question. (AR 304-05.) In 2014 she exacerbated her knee pain after overexerting herself walking while on a vacation. (AR 305.) She reported left knee pain when walking, sitting, standing up from a seated position, and using stairs. *Id*. Plaintiff injured her hip after falling on her deck around 2008. *Id*. X-rays revealed hip osteoarthritis. *Id.* She reported severe right hip pain when she walked. *Id*. Since approximately 2007, she could not sleep on her right side due to this pain. (AR 306.) In 2014, her hip and knee pain worsened to where could barely walk a block. *Id*. Treating providers observed that she had limited and painful range of motion in the hip. (AR 258.) She began physical therapy for these problems in April 2015. (AR 304.) Physical therapists

5

observed limited range of motion in the left hip and knee, and limited strength in the left hip. (AR 316-17.) They observed abnormal gait due to reduced range of motion in the knee. (AR 317.) Plaintiff demonstrated significant weakness of the muscles surrounding the hip and knee, with pain and limited mobility. (AR 330.) Physical therapists concluded that her right limb balance was significantly impaired due to her gluteal weakness (AR 362) and that her right hip pain was related to her lumbar spine. (AR 379.) Testing was also consistent with a diagnosis of osteoarthritis. *Id.* Physical therapists observed difficulty with putting full weight over the right side due to right hip pain. (AR 308.) They observed that she needed occasional upper extremity support with prolonged standing and walking. (AR 428, 443, 450.) They believed that her pain caused decreased strength, upper and lower extremity range of motion, activity tolerance, balance, sleep, functional mobility, energy, flexibility, and antalgic gait. (AR 316, 353, 360-61, 369-70, 378, 405, 413, 420, 431, 439, 445-46, 452-53.)

Plaintiff's musculoskeletal condition worsened in the beginning of 2018 after she injured her back shoveling snow. (AR 738.) Activity aggravated pain and only rest relieved it. (AR 742.) She was prescribed pain medication for her injury, but it was ineffective. (AR 738, 742.) Treating physician Joseph M. Lach, D.O., observed that Plaintiff's spine was misaligned, that she had an abnormal gait that was left favoring, and restricted range of motion of the hip. (AR 744.) A July 2018 CR scan of the lumbar spine confirmed scoliosis. (AR 748.) Despite treatment with physical therapy and medication, her back pain flared at times. (AR 765.) Dr. Lach continued to observe limited range of motion in the back. (AR 767.) By November 2018 Plaintiff reported headaches and weakness in the hands with associated pain radiating down into her arms and hands. (AR 771.) Dr. Lach observed decreased upper extremity grip strength. (AR 824.) In February 2019 Plaintiff

6

slipped and fell and injured her neck and back. (AR 816, 820.) A physician's assistant observed

tenderness, discomfort, and stiffness in the neck as well as tenderness along the thoracic spine.

(AR 820.)

Plaintiff returned to physical therapy for her back injury in October 2018. (AR 730.)

Physical therapists observed tension in the lumbar spine. (AR 578.) They observed decreased

strength in the hip, knee, right ankle, and left hip. (AR 668.) Plaintiff suffered back pain that

radiated to her right leg and ankle. (AR 634.) Her pain made falling asleep difficult and disturbed

her sleep once she fell asleep. (AR 634-35.) She had increased pain with sitting, standing, walking,

dressing, and she needed to frequently adjust positions due to pain. (AR 635.) Physical therapists

believed pain caused decreased strength in the back, core, and legs, range of motion in the back,

activity tolerance, balance, sleep, functional mobility, joint mobility, stability, postural awareness,

energy, and gait disturbance. (AR 560, 567-68, 577, 588-89, 598-99, 637-39, 655, 669, 682-83,

692, 701, 710-11.) They believed her deficits were causing difficulty walking, standing,

transferring positions, sitting for prolonged periods, balancing, and managing stairs. (AR 560, 639,

683.)

Consultative physician J. Smejkal, M.D. examined Plaintiff at the Commissioner's request

in June 2016. (AR 298-302.) Dr. Smejkal observed pain and stiffness in her hands, fingers, as well

as right hip and left knee with restricted range of motion in the left knee. (AR 300, 302.)

In support of remand, Plaintiff first argues that the ALJ erred in her assessment of the

RFC.  The ALJ found Plaintiff could perform less than a full range of light work as defined by 20

C.F.R. Sec. 404.1567(b). (AR 19.) However, 20 C.F.R. Sec. 404.1567(b) does not define light

work and rather provides examples of what light work might entail. For example, light work can

involve very little lifting but a "good deal" of standing and walking or sitting with pushing and

pulling of arm or foot controls. 20 C.F.R. Sec. 404.1567(b). While the ALJ specifically defined

how frequently Plaintiff could perform postural activities he did not identify her lifting, carrying,

standing, walking, or sitting capacity. (AR 19-23.) Plaintiff asserts that the ALJ's error was not

harmless because the ALJ found Plaintiff could perform her past relevant work as a paralegal

which was light work that may have required Plaintiff to lift very little but to stand and walk for

most of the day, and the definition may have contemplated light work where Plaintiff was seated

for most of the day and operated hand controls. Plaintiff contends that without further explanation

it is unclear whether the ALJ's findings were internally incompatible, and a remand would be

appropriate for the ALJ to craft an RFC that allows for meaningful review. *Parker v. Astrue*, 597

F.3d 920, 921 (7th Cir. 2010) (internally inconsistent findings in an ALJ's decision require a

remand); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (ALJ's decision

must be explained with enough detail and clarity to permit meaningful review); *Scott v. Barnhart*,

297 F.3d 589, 595 (7th Cir. 2002)(ALJ must provide sufficient detail in analysis to allow a court

to trace the path of their reasoning).

In finding that Plaintiff had the RFC to perform light work with postural and manipulative

limitations, the ALJ relied on state agency medical consultant's initial-level medical opinion. (AR

22, 62.) The state agency medical consultant reviewed evidence through June 2016, but the ALJ

decided Plaintiff's application through June 2019. (AR 17-18, 62.) Thus three years of evidence

was unreviewed by any physician.

Plaintiff points out that an ALJ cannot rely on a state agency medical consultant's medical

opinion as substantial evidence that supports his RFC assessment when state agency consultant did

not review all pertinent evidence. *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010). An ALJ may not predict how a state agency consultant might consider new evidence that was not part of the file when he issued his opinion. *Harlin v. Astrue*, 424 Fed.Appx. 564, 567-68 (7th Cir. 2011). The ALJ must instead submit all new and potentially decisive evidence to medical scrutiny. *McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2019)("an ALJ may not 'play doctor and interpret new and potentially decisive medical evidence' without scrutiny")(quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)).

Here, evidence that post-dated the state agency consultant's review reflected diminished grip extremity strength (AR 523, 731), degenerative disc disease of the lumbar facet joints (AR 748), diminished grip strength (AR 772), and right carpal tunnel syndrome (AR 824). The ALJ possessed no medical training or education to independently interpret the significance of this evidence. *Lambert*, 896 F.3d at 774. Plaintiff contends that the ALJ erred when he failed to explain how evidence supported his finding that Plaintiff could frequently, as opposed to occasionally, or less-than-occasionally, handle and finger. *See Id.*; (AR 19). Plaintiff argues that the ALJ's error was not harmless because if the state agency consultant had reviewed the EMG as well as other evidence of Plaintiff's diminished grip strength, the state agency consultant may have found that a limitation to only occasional fingering and handing was more appropriate. If Plaintiff was limited to only occasional fingering and handing, she would have been unable to perform her past relevant work as a paralegal per the Dictionary of Occupational Titles ("DOT"). If Plaintiff could not perform her past relevant work she would be limited to light work and disabled per grid rule 20 C.F.R. 404, Subpart P, Appendix 2, § 202.06 as of her alleged onset date due to her advanced age (age 55 or over), absence of transferable work skills, and education. Likewise, if the

9

state agency consultant had reviewed the evidence of degenerative changes to the facet joints, the state agency doctor may have concluded that Plaintiff was limited to sedentary work, which would also prevent her from performing her past relevant work.

In response, the Commissioner argues that the ALJ's citation to the definition of light work sufficiently indicated the most that Plaintiff could do despite her impairments. The Commissioner contends that the definition of light work clearly stated Plaintiff would be able to stand or walk for a total of six hours in an eight-hour day. If the ALJ found Plaintiff could perform the full range of light work, then the definition would indeed be instructive as the ALJ would have, by incorporation, found Plaintiff could stand or walk for that amount of time. However, here the ALJ did not find that Plaintiff could perform the full range of light work but could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; and could perform frequent but not constant handling and fingering with the dominant right arm. (AR 19.) Therefore, this Court cannot discern, from the citation to the definition of light work, what amount of standing and walking the ALJ envisioned that Plaintiff could perform.

The Commissioner further contends that the ALJ reasonably found Plaintiff could perform her past relevant work as a paralegal, as it was generally performed in the national economy. However, the paralegal job required sitting for extended periods along with lifting and carrying objects like files and books weighing up to 20 pounds. Dictionary of Occupational Titles ("DOT') 119.267-026, 1991 WL 647027. If the ALJ intended that Plaintiff could perform light work where she stood or walked for up to six hours a day but lifted and carried only minimal weight, then Plaintiff would be unable to perform the paralegal job as it is typically performed. *Id.*; (AR 19).

The Commissioner also argues that the ALJ did not need to submit any new evidence

postdating the state agency medical consultants' review to medical scrutiny because the ALJ reasonably evaluated the new evidence himself and determined that no additional functional limitations were warranted. The Commissioner contends that the evidence Plaintiff refers to did not establish that she would have suffered the functional restrictions she reported. However, the Seventh Circuit has repeatedly held that an ALJ must obtain expert review of new and potentially decisive medical evidence because an ALJ does not possess the requisite medical education or training to determine the significance of objective medical evidence. *McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2019) ("an ALJ may not 'play doctor and interpret new and potentially decisive medical evidence' without medical scrutiny") (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *accord Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (ALJ cannot rely on their interpretation of objective medical evidence); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

Here, evidence that post-dated the state agency doctor's review reflected diminished strength and range of motion due to pain (AR 609-10, 669, 682, 692, 701, 709-10, 731), degenerative disc disease of the lumbar facet joints (AR 748), diminished grip strength (AR 770, 772), and an EMG that indicated right carpal tunnel syndrome (AR 824). The EMG consisted of a nerve conduction study and needle electromyography. (AR 824.) The nerve conduction study revealed slow sensory nerve conduction velocity over the finger-wrist segment, as well as prolonged terminal latency, in the right median nerve. *Id*. The ALJ impermissibly independently determined that findings, such as those discussed above, did not produce any additional functional limitations. *McHenry*, 911 F.3d at 872; *Lambert*, 896 F.3d at 774; *accord Myles*, 582 F.3d at 677.

Plaintiff argues, however, that evidence of diminished grip and extremity strength along with musculoskeletal abnormalities contradicted the ALJ's finding that Plaintiff could frequently, handle and finger. Plaintiff notes that if she was limited to only occasional fingering and handling, or less, she would have been unable to perform her past relevant work as a paralegal per the DOT. 119.267-026, 1991 WL 647027. Plaintiff further notes that if she could not perform her past relevant work, she would be limited to light work and disabled per grid rule 20 C.F.R. 404, Subpart P, Appendix 2, § 202.06 as of her alleged onset date. While the Commissioner contends that the ALJ reasonably considered the new evidence, the ALJ was not permitted to independently determine the significance of the objective medical evidence, which the Seventh Circuit has repeatedly held, constitutes error. *McHenry*, 911 F.3d at 872 ("an ALJ may not 'play doctor and interpret new and potentially decisive medical evidence' without medical scrutiny") (quoting *Goins*, 764 F.3d at 680); *accord Lambert*, 896 F.3d at 774; *Stage*, 812 F.3d at 1125; *Moon*, 763 F.3d at 722; *Myles*, 582 F.3d at 677.

Plaintiff also argues that the ALJ erred in failing to explain how and if she considered Plaintiff's eye pain when assessing her RFC. (AR 19-23.) The ALJ found that Plaintiff's visual impairment was non-severe based on a medical expert's response to interrogatories (AR 23, 841-43.) The ALJ, however, did not explain if Plaintiff's eye pain would have impaired her ability to perform work as a paralegal. An ALJ's assessment of a claimant's RFC must include all functional restrictions that the evidence supports and must include limitations caused by impairments that are not, by themselves, severe. SSR 96-8p. *Accord Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)(citation omitted). SSR 16-3p obligates an ALJ to evaluate a claimant's allegations of pain, and SSR 96-8p requires the ALJ to explain how he considers a claimant's pain

when he crafts a claimant's RFC.

Here, Plaintiff reported persistent eye pain that began after she was hit with a brick in 1972 which split her retina and led to a lens replacement surgery in 2002 after scar tissue built up in her eye. (AR 38, 225, 298, 463, 640, 765.) She reported being partially blind in that eye with glasses being ineffective to improve her vision. *Id*. Her left eye pain also caused headaches. *Id*. She stopped working, in part, because her eye problems made it difficult to read as necessary for her job and to function generally due to pain. (AR 39-40.) Plaintiff explained she stopped working as a paralegal in part because her eye problems prevented her from effectively reading the material that she needed to complete her job duties. (AR 39-40.) She explained that her eye pain became worse when she used a computer for extended periods of time. (AR 46, 462-63, 551, 553.) She could only use a computer if she covered her left eye entirely. (AR 463.) Plaintiff notes that the ALJ never analyzed Plaintiff's reported pain or determined what limitations her medically determinable non-severe visual impairment produced. (AR 19-23.) Plaintiff argues that the ALJ's omission was not harmless because if the ALJ had included functional restrictions that affected the left eye from this pain, Plaintiff may not have been able to perform all duties that her past relevant work as a paralegal required, and, if unable to perform past relevant work as a paralegal, 20 C.F.R. 404, Subpart P, Appendix 2, § 202.06 would have required the ALJ to find Plaintiff disabled as of the alleged disability onset date.

The Commissioner argues that the ALJ properly excluded functional restrictions that stemmed from Plaintiff's eye pain because the ALJ reasonably relied on the medical expert's responses to a post-hearing set of interrogatories which stated Plaintiff did not have visual limitations. The Commissioner further contends that the medical expert's opinion and the ALJ's

13

ultimate rejection of limitations that pertained to eye pain were supported by a lack of clinical findings indicating "there was no ocular etiology seen related to the Plaintiff's eye pain and pressure."  However, "the etiology of pain is not so well understood" that one could expect testing that would confirm Plaintiff's pain. *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). An ALJ may not reject a claimant's reported pain simply because it is not corroborated by objective evidence. *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014); *accord Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The Commissioner notes that the medical expert opined Plaintiff did not suffer a visual impairment. However, Plaintiff argues that the lack of a diagnosed visual impairment did not establish that Plaintiff did not suffer eye pain.  Plaintiff reported persistent eye pain that began after she was hit with a brick in 1972 which split her retina and led to a lens replacement surgery in 2002 after scar tissue built up in her eye. (AR 38, 225, 298, 463, 640, 765.) She testified that her left eye pain caused throbbing, headaches, and swelling in her face and right eye, that impaired vision and was sufficiently distracting such that she could not perform work functions as a paralegal. (AR 39-41, 142.) She reported that this eye pain became worse when she used a computer for extended periods of time. (AR 46, 462-63, 551, 553.) In light of Plaintiff's allegations of eye pain, this Court finds that the ALJ erred in not explaining how she considered the functionally limiting effects of Plaintiff's severe and non-severe impairments, including her eye pain. SSR 96-8p; *Stage*, 812 F.3d at 1125.

Plaintiff also argues that the ALJ erred in failing to discuss favorable VE testimony. District Courts within the Seventh Circuit have held that an ALJ errs where he solicits testimony from a VE that ultimately favors a claimant but fails to address or discuss that testimony in his decision. *See e.g., Bailey v. Barnhart,* 473 F.Supp.2d 822, 840 (N.D. Ill. 2006)(ALJ's failure to

address a limitation that the vocational expert testified would preclude them from work was a "red flag" that needed to be addressed on remand); *Sayles v. Barnhart*, 2001 WL 1568850 at 9 (N.D. Ill. Dec. 7, 2001) (ALJ may not ignore favorable vocational expert testimony). Here, the ALJ questioned the vocational expert about the effect of a limitation to a total of two hours of computer use a day with no more than 30 minutes of use at a time, would have on an individual with Plaintiff's RFC. (AR 52.) The vocational expert responded that this would preclude work as a paralegal because to perform work as a paralegal, an individual was required to read from one-third to two-thirds of the day. *Id*. The ALJ did not discuss this favorable testimony. Plaintiff testified that she had difficulty with working in front of a computer screen for an extended period which the ALJ must have considered when he questioned the VE about the impact of this limitation on an individual's ability to perform work as a paralegal. (AR 39-40, 46.) The ALJ did not, however, identify that evidence or explain how he considered it to conclude that Plaintiff had no such limitation in his final RFC. (AR 19-23.) Again, Plaintiff contends that the ALJ's omission was not harmless because if the ALJ had included the limitation in his RFC it would have precluded Plaintiff from performing her past relevant work as a paralegal, requiring a finding of disability per grid rule 20 C.F.R. 404, Subpart P, Appendix 2, § 202.06.

The Commissioner contends that the ALJ did not err in failing to address favorable vocational expert testimony because despite the opinions issued by the Northern District of Illinois reflecting that that was an error, another case, *Lipscomb v. Berryhill*, 2017 WL 3580138 at 6 (N.D. Ind. Aug. 18, 2017)(Novak, MJ), distinguishes it. However, *Lipscomb* diverges from the proposition that the Northern District of Illinois found in *Bailey v. Barnhart*, 473 F.Supp.2d 822, 840 (N.D. Ill. 2006), which states that an ALJ's failure to address favorable expert testimony is a

"red flag" that must be addressed on remand.  This Court, and others, in more recent decisions, have agreed with the decision in *Bailey* and have held that an ALJ errs where he solicits expert testimony and then ignores that testimony. *Hampton-Lewis v. Berryhill*, 2018 WL 6242463, at *7 (N.D. Ind. Nov. 29, 2018); *Diaz v. Berryhill*, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018); *Morton v. Berryhill,* 2018 WL 264200 at 6 (N.D. Ill. Jan. 2, 2018); *Kukec v. Berryhill*, 2017 WL 5191872, at *3 (N.D. Ill. Nov. 9, 2017). Here, Plaintiff testified that she had difficulty using a computer due to her eye pain and the ALJ asked the vocational expert about limited computer usage presumably with this limitation in mind. (AR 52.) The ALJ's failure to discuss the vocational expert's testimony with respect to this limitation and why she ultimately excluded it from the RFC leaves this Court with no rationale to meaningfully review the decision. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (ALJ must provide sufficient detail in analysis to allow a court to trace the path of their reasoning).

Accordingly, remand is warranted on all of the above issues related to the ALJ's assessment of Plaintiff's RFC.

Next, Plaintiff argues that the ALJ incorrectly assessed reported symptoms and limitations. The ALJ briefly discussed some of the limitations Plaintiff had while performing activities of daily living. The ALJ ultimately found that, in 2017, Plaintiff reported she was able to perform basic activities of daily living. Thus the ALJ rejected Plaintiff's reported symptoms and limitations for not being "entirely consistent" with the record. (AR 20-22, 651-52.) Plaintiff argues that, to the extent that the ALJ relied on Plaintiff's limited activities of daily living to discount her reported symptoms and limitations, the ALJ erred in not explaining how a particular activity contradicted any particular reported symptom or limitation.  *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir.

16

2001)(ALJ must explain how specific activities of daily living contradict a claimant's alleged functional restrictions). Plaintiff points out that she only reported that she was able to walk, stand, transfer positions, cook, clean, and negotiate stairs without increased back pain but not that she was able to do it as part of competitive employment. (AR 652.) Plaintiff reiterates that she had severe pain that limited her ability to perform activities on her own and she relied on the help of others to perform basic activities of daily living. (AR 41-43, 298). Plaintiff dropped items due to aching pains. (AR 298.) She had dizzy spells throughout the day that caused her to fall, and these falls previously resulted in hospitalizations. (AR 43, 256, 298, 305.)

   An ALJ must take into consideration that, when performing activities of daily living, Plaintiff could obtain as much help from others as needed, work at her own pace depending on her pain, and if her pain was unbearable, take as many breaks for as long as she wanted between activities, and that employers would not permit such flexibility. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)(ALJ must consider the differences between competitive work and activities of daily living because the claimant may perform the latter at will). Plaintiff argues that the ALJ erred in failing to explain how and if he considered that Plaintiff's activities of daily living were limited and adjusted around her impairments. *See id.*; *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (ALJ erred by not explaining how and if she considered a claimant's difficulties in performing activities of daily living). The ALJ also found Plaintiff's ability to shovel snow suggested that she retained or regained significant functionality. (AR 22.) However, Plaintiff severely injured her back and knee with this snow shoveling. (AR 45, 634, 738, 742.) An ALJ cannot consider an "ill-advised activity" that harms a claimant to conclude that the claimant can work. *Scrogham v. Colvin*, 765 F.3d 685, 700-01 (7th Cir. 2014).

The ALJ also relied heavily on what he found to be "normal" objective signs and findings to reject Plaintiff's reported symptoms and limitations. (AR 20-22.) However, the record showed many abnormal findings that the ALJ needed to consider and explain how she made her consideration especially in the face of the unfavorable "normal" findings she cited. An April 2015 x-ray of the hip revealed osteoarthritis. (AR 305.) CR scans of the pelvis and left knee revealed degenerative changes in both hips as well as mild degenerative knee changes. (AR 267, 271.) A May 2015 x-ray of the hip and knee revealed degenerative joint disease in both, and a possible left knee medial meniscal tear. (AR 258.) A July 2018 CR scan of the lumbar spine revealed further degenerative changes, as well as scoliosis. (AR 748.) A November 2018 EMG scan of the wrists revealed she had right carpal tunnel syndrome. (AR 824.) In 2018 Plaintiff injured herself while shoveling snow and a July 2018 CR scan revealed scoliosis in the spine, and an EMG scan revealed right wrist carpal tunnel. (AR 738, 748, 824.) Dr. Lach  observed Plaintiff's spine was misaligned, that she had abnormal gait that was left favoring, restricted hip and back range of motion, and decreased upper extremity grip strength. (AR 744, 767.) A July 2018 CR scan of the lumbar spine revealed scoliosis. (AR 748.) Despite treatment with physical therapy and medication her back pain periodically flared up. (AR 765.) In February 2019 she again injured her neck and back. (AR 816, 820.) A physician's assistant observed tenderness, discomfort, and stiffness in the neck as well as tenderness along the thoracic spine. (AR 820.)

Plaintiff argues that the ALJ was required to explain why favorable evidence, such as that cited above, was less probative than unfavorable "normal" evidence and how he determined that unfavorable evidence was more indicative of Plaintiff's functional capacity. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Furthermore, the state agency medical consultant's opinion

that the ALJ relied on in assessing Plaintiff's RFC stated that the objective evidence alone substantiated Plaintiff's reported symptoms and limitations. (AR 22, 61.) SSR 16-3p requires an ALJ to explain how he considers the opinion of consultative medical sources when he assesses a claimant's subjective allegations. *See, e.g., Strong ex rel. M.H. v. Astrue*, 2012 WL 6186831 at *9 (N.D. Ill. 2012). SSR 16-3p further required the ALJ to explain why he adopted one portion of the state agency consultant's opinion but not other portions of that same opinion. *McKinzey v. Astrue*, 647 F.3d 884, 891 (7th Cir. 2011); *Godbey v. Apfel*, 238 F.3d 803, 807-08 (7th Cir. 2000).

Plaintiff also contends that the ALJ erred in relying on Plaintiff's purported non-compliance with treatment to reject her subjective allegations. The ALJ discounted Plaintiff's reported symptoms and limitations because she failed to follow through with physical therapy for her back pain as she was instructed. (AR 21.) SSR 16-3p requires an ALJ to explain how he considered a claimant's treatment. However, an ALJ may not draw a negative inference about a claimant's reported symptoms and limitations for treatment non-compliance without first considering any possible explanation a claimant may have for noncompliance. *Id. Accord Craft v. Astrue*, 539 F.3d 668, 679-80 (7th Cir. 2008). Here, the ALJ discounted Plaintiff's statements without first obtaining any explanation that Plaintiff might have had for failing to follow through with treatment. Instead, the ALJ impermissibly speculated that Plaintiff must not have attended physical therapy because her impairments did not produce the debilitating pain and symptoms that she described. An ALJ, however, may not substitute "presumptions, speculations [sic] and suppositions" SSR 86-8; *accord White ex rel. Taylor v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence").

In response, the Commissioner argues that the Court should not disrupt the ALJ's evaluation of Plaintiff's symptoms because it was not "patently wrong."(citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). However, an ALJ's decision is "patently wrong" when it lacks explanation and support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

The Commissioner contends that the ALJ did not ignore favorable evidence in his analysis, because the ALJ had summarized the evidence as part of Plaintiff's medical history. (AR 18-23). However, the ALJ needed to address the significance of the evidence and a summary does not substitute for the analysis the ALJ was obligated to make. *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 391 (7th Cir. 1992); *see also Briscoe ex rel. Taylor*, 425 F.3d at 351 (ALJ's decision must be explained with enough detail and clarity to permit meaningful review); *Scott*, 297 F.3d at 595 (ALJ must provide sufficient detail in analysis to allow a court to trace the path of his reasoning). The Commissioner maintains that the ALJ was not required to discuss every piece of evidence.  However, the ALJ was obligated to predicate his decision on all relevant evidence and to explain how he considered evidence favorable to Plaintiff per *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018)(citing *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014)). The ALJ, for example, highlighted instances from May 2016 through February 2019 where Plaintiff had normal reflexes, strength, range of motion, sensation, and vision. (AR 20-22.) However, other evidence within the same period showed abnormal findings. From April 2015 through November 2018 treating doctors opined her pain was causing decreased strength and range of motion. (*See e.g.*, AR 709-10.) In June 2016, the consultative examiner observed abnormal reflexes as well as pain and stiffness in the left knee that restricted range of motion. (AR

300, 302.) Treating providers often observed Plaintiff had decreased strength in several areas. (*See e.g.*, AR 772.) They observed painful and limited range of motion in the right hip in July 2018. (AR 744.) In September 2018 doctors observed limited range of motion in the spine. (AR 767.) In December 2018, they observed decreased upper extremity strength. (AR 772.) Clearly, the ALJ erred in not explaining how she found that the unfavorable "normal" clinical findings were more persuasive than evidence of abnormal functionality and pain from the same period. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001)(ALJ must explain how unfavorable evidence is more probative than favorable evidence).

The Commissioner further contends that, while the ALJ did not ask Plaintiff about reasons for her treatment non-compliance, Plaintiff failed to argue how inquiry into non-compliance would have changed how the ALJ considered the evidence. However, the Commissioner attempts to shift the evidentiary burden to Plaintiff, for no authority affirmatively requires the claimant to proffer explanations for non-compliance with medical treatment. It was the ALJ's sole obligation to obtain any explanation Plaintiff had for failure to comply with treatment and then to determine if any reason was valid. SSR 16-3p; Craft v. Astrue, 539 F.3d 668, 679-80 (7th Cir. 2008).

The Commissioner also contends that Plaintiff's treatment history was just one of many factors the ALJ considered when analyzing Plaintiff's reported symptoms and limitations. The Commissioner implies that the ALJ's failure to consider treatment history and reasons of non-compliance was therefore harmless. However, when analyzing a claimant's reported symptoms and limitations an ALJ's error is only harmless if the ALJ explains that she would have reached the same conclusion even without the error and provides a back-up position in support of that contention. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). The ALJ erred because

she failed to do that here.

The Commissioner argues that the ALJ was not required to engage in "such a rigid analysis" that required an ALJ who has found an inconsistency between reported symptoms and activities of daily living, to identify the activity and the specific reported symptom or limitation it contradicts. The Commissioner attempts to sidestep the requirement that the Seventh Circuit found in *Zurawski* that directs that, where an ALJ relies on a claimant's activities of daily living as evidence that contradicts a claimant's subjective allegations, an ALJ must identify a specific activity of daily living and must explain how that activity is incompatible with a claimant's specific subjective allegation.. 245 F.3d at 888 ("...ALJ should have explained the 'inconsistencies' between [claimant's] activities of daily living (that were punctured with rest), his complaints of pain, and the medical evidence").

Here, the ALJ acknowledged that Plaintiff, for example, listened to audio books and music. (AR 20.) However, the ALJ did not explain how this passive activity that required no physical exertion to complete indicated that Plaintiff's alleged difficulty using the hands (AR 36), eye pain (AR 39), or difficulty lifting and carrying were not as severe as Plaintiff alleged. The ALJ also acknowledged that Plaintiff did laundry, prepared meals, and completed light housework. (AR 20.) However, the ALJ again erred in not explaining how these specific activities contradicted Plaintiff's reported symptoms and limitations. *Id*.; *Zurawski*, 245 F.3d at 888. Furthermore, the ALJ erred in mischaracterizing Plaintiff's limited ability to perform activities of daily living because Plaintiff also stated that she often relied on her husband to complete these activities because she would be in too much pain or too fatigued to complete them on her own. (AR 41-43, 298); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (ALJ may not mischaracterize

22

evidence). The ALJ also erred in not explaining what consideration she gave the fact that Plaintiff

relied on assistance from others, or that she could take as many breaks or work as slow as she

wanted due to pain and fatigue, for this flexibility would not be available to her in competitive

work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (ALJ must consider the differences

between competitive work and activities of daily living because the claimant may perform activities

of daily living with nearly unlimited flexibility). The fundamental differences between activities of

daily living and work tasks make activities of daily living a poor metric by which to measure a

claimant's ability to perform work-tasks on a full-time basis. *Id*.

      The Commissioner also contends that ALJ reasonably relied on Plaintiff's ability to shovel

snow to suggest that Plaintiff did not suffer the disabling pain and symptoms that she alleged.  The

ALJ's reliance on Plaintiff's ability to shovel snow constituted error for two reasons. First, the

ALJ's citation to this single instance where Plaintiff shoveled snow constituted impermissible

cherry-picking of the record, for the ALJ cited Plaintiff's one-time performance of an activity to

suggest that Plaintiff was not disabled. *Plessinge*r, 900 F.3d at 915 (citing *Yurt*, 758 F.3d at 859).

Second, the ALJ may not rely on a claimant's performance of an "ill-advised activity" to find the

claimant is not as limited as alleged or that the claimant can engage in full-time work. *Scrogham v.

Colvin*, 765 F.3d 685, 700-01 (7th Cir. 2014). The Commissioner, like the ALJ, attempts to

minimize the injury Plaintiff sustained snow shoveling, like her limited range of motion and pain.

While the ALJ may have found that limited range of motion and pain were not significantly serious

results of Plaintiff's ill-advised snow-shoveling, the ALJ possessed neither the medical education

nor training to reach such a conclusion. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

      Accordingly, remand is required on the issues raised by Plaintiff regarding the ALJ's

assessment of Plaintiff's reported symptoms and limitations.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: June 9, 2021.

s/ William C.  Lee
William C. Lee, Judge
United States District Court